**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Dominguez Mendoza, individually, ) | No. CV-13-258-PHX-NVW |
| Plaintiff, ) | **MEDICAL EVALUATION ORDER** |
| vs. ) | |
| City of Peoria, a municipality, by and ) through its Police Department, an Agency ) of the City of Peoria; et al., ) | |
| Defendants. ) | |

On September 17, 2013, the assigned District Judge granted Plaintiff's Motion to Refer Discovery Matter to Magistrate Judge and referred all discovery issues related to the medical exam of Plaintiff by his treating physician to the undersigned Magistrate Judge for resolution prior to the scheduled close of discovery. (Docs. 53, 55) That same day, Plaintiff filed a Motion to Conduct Medical Examination by Treating Physician, an issue within the scope of the District Judge's referral.[1] (Docs. 56, 61) Plaintiff seeks an order that Plaintiff, an inmate imprisoned in the Arizona Department of Corrections ("ADOC"), be transported to the United States courthouse in Phoenix, so his former treating physician may "properly evaluate the current status of [Plaintiff's] injury, and opine as to any permanent impairment

---

[1] This Magistrate Judge struck Plaintiff's initial Motion without prejudice with leave to re-file the Motion for a violation of the Local Rules as explained in the September 19, 2013 Order. (Doc. 60) Plaintiff having timely re-filed a Local Rules-compliant Amended Motion, doc. 61, the Magistrate Judge will consider the merits of Plaintiff's request.

rating." (Doc. 61 at 2) Defendants oppose the request. (Doc. 58)

In light of Plaintiff's incarceration until after the anticipated trial of this action, detainee evaluations are frequently performed at the federal courthouse for security reasons, all costs associated with the evaluation will be paid by Plaintiff, and it being in the best interests of the pursuit of truth and justice that the jury in the trial of this action have current information regarding Plaintiff's injury and future limitations, if any, the Motion will be granted.

**I. Background**

This Section 1983 action arises out of a severe and disfiguring avulsive injury to Plaintiff's left forearm sustained during Plaintiff's arrest on February 23, 2011, when a City of Peoria police canine, Havoc, was deployed by his police handler and bit and held onto Plaintiff's arm when, according to Plaintiff, he was peacefully surrendering to the police. (Docs. 7, at 9; 17 at 2-3) Plaintiff claims that, *inter alia*, Defendants' use of force under the attendant circumstances was unreasonable and constituted excessive force in violation of Plaintiff's rights under the Fourth Amendment of the United States Constitution. (Doc. 17 at 2-3) In addition to "incurr[ing] more than $88,332.79 in medical bills" and requiring "significant future medical care," Plaintiff contends he "suffered extensive and permanent injuries to his dominant hand, catastrophically affecting his ability to make a living and adversely affecting the relationship with his young son, . . . [he] can no longer use his hands to earn a living in the field of construction, a position he held prior to this incident. . . [and his] injuries prohibit his ability to lift up and hold his minor son, . . . much less participate in physical activities such as throwing a ball[.]" (*Id.* at 3-4)

Defendants deny any liability, contending Defendant Officer Brewer's use of Havoc was objectively reasonable based upon the totality of the circumstances. (*Id.* at 4-5) In the parties' joint case management plan, Defendants allege that, upon information and belief, Plaintiff's earning capacity and his ability to have a relationship with his son are hampered by his current prison status, not the injury to his left arm. (*Id.*) While the issues of liability are hotly contested, Defendants also dispute the nature and extent of Plaintiff's injuries and

1  the impact, if any, Plaintiff's injury has had and will have on his future earnings.

2  Initially filed in the Maricopa County Superior Court, Defendants removed this action
3  to this District Court on February 6, 2013. (Doc. 1) In the May 17, 2009 Scheduling Order,
4  the District Judge fashioned deadlines for the fair and reasonably expeditious resolution of
5  this case. (Doc. 20)  A recent limited modification to the Scheduling Order mandates that,
6  among others, expert depositions shall be completed no later than Friday, November 8, 2013;
7  the completion of all fact discovery, including all disclosures required under Rule 26(a)(3),
8  by Monday, November 25, 2013; and all dispositive motions and motions challenging expert
9  opinion evidence must "[b]e filed no later than Thursday, December 12, 2013, at 5:00 p.m.
10 Arizona time." (Doc. 59 at 1-2) There is no trial date scheduled at this time. The initial
11 Scheduling Order makes clear "[t]he Deadlines Are Real. The parties are advised that the
12 Court intends to enforce the deadlines set forth in this order, and they should plan their
13 litigation activities accordingly." (Doc. 20, ¶ 11 at 5) (emphasis in original).

## II. Motion for Medical Examination

15 Plaintiff's Motion requests an order directing ADOC, Plaintiff's current physical
16 custodian,  to transport Plaintiff from its prison complex in Marana, Arizona, which is just
17 north of Tucson, to Phoenix so Plaintiff may be examined by his treating reconstructive
18 surgeon, Dr. Lloyd P. Champagne, and return him the same day. (Doc. 61 at 2) According
19 to his counsel, "Dr. Champagne's examination of David is necessary to properly evaluate
20 the current status of David's injury, and opine as to any permanent impairment rating." (*Id.*)
21 For security purposes, the U.S. Marshals' ("USMS") lock-up on the second floor of the
22 Sandra Day O'Connor U.S. Courthouse in Phoenix is routinely used by psychologists,
23 psychiatrists, and other healthcare specialists to examine non-hospitalized detainees,
24 predominantly for mental competency issues. The problem for the parties is Plaintiff has not
25 been seen by his former treating physician since April 17, 2012[2] for Dr. Champagne to have
26 a current understanding of Plaintiff's permanent arm, wrist, and hand functional and

---

[2] *See* doc. 58-1, Exhibit ("Exh.") A at 1.

- 3 -

1  sensational limitations, if any, to offer expert opinions either in a deposition or at trial due
2  to Plaintiff's imprisonment.[3] The public records from ADOC's website reflect Plaintiff was
3  received by ADOC on January 7, 2013 to begin a prison sentence and, assuming he serves
4  the entire sentence day-for-day, he will not be released until August 12, 2014.[4]

Defendants oppose Plaintiff's Motion. (Doc. 58) First, Defendants deny that Dr. Champagne is a treating physician, which demonstrates a significant misunderstanding of the meaning of "treating physician" in the context of Rule 26, Fed.R.Civ.P.  In the same paragraph, however, Defendants acknowledge that "Dr. Champagne released Mr. Mendoza from his care in April 2012 and has not seen Mr. Mendoza in 'many months[,]'" citing Exhibits A & B, Expert Report, dated June 25, 2013. Defendants' Exhibit A confirms Plaintiff "had skin grafts and a transfer of ligaments performed by a physician, Dr. Lloyd P. Champagne, with the Arizona Center for Hand Surgery in Phoenix, Arizona." (Doc. 58-1, Exh. B at 1)  As an additional ground to deny the Motion, Defendants argue "there is no medical need for Dr. Champagne to see Mr. Mendoza" as if a medical evaluation of a litigant is only appropriate when a litigant is undergoing active care and treatment. This argument is absurd in the context of personal injury litigation.

Defendants request that if the Court is inclined to grant Plaintiff's motion, that 1) they be allowed a reasonable amount of time to find and name an expert to rebut Dr. Champagne's additional opinions; 2) their expert be able to conduct their own evaluation, preferably on the same date as Dr. Champagne, on a date that is mutually agreeable to the parties and the Court; 3) their expert be provided a reasonable opportunity to review Dr.

---

[3] Dr. Champagne's June 25, 2013 narrative report confirms that "[s]ince I have not seen him in months, I am not exactly sure what [Plaintiff's] extensors are doing and in a general stance, I am not exactly sure about the competency of his hand." (Doc. 58-2, Exh. B at 2)  "[I] am not sure of the strength of his arm, and, at this time, will not be able to comment on his ability to use that arm. It is possible that careful examination and documentation in the future can assist with that information." (*Id*.)

[4] *See* http://www.azcorrections.gov/inmate_datasearch/results/Mendoza_David_D (last viewed on September 18, 2013)

- 4 -

Champagne's supplemental report before providing a rebuttal opinion; and 4) the costs of transport and supervision for the evaluation, if any, be paid by Plaintiff.

### III. Expert Witnesses and Treating Physicians

Federal Rule of Civil Procedure 26 requires parties to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed.R.Civ.P. 26(a)(2)(A). "The Federal Rules contemplate two different classes of experts: those retained or specially employed to give expert testimony in a case, and witnesses who are not retained or specially employed but, nevertheless, may provide expert testimony." *DeGuzman v. U.S.*, 2013 WL 3149323, at *2 (E.D. Cal. June 19, 2013) (citations omitted). In December 2010, the Federal Rules of Civil Procedure were modified with the addition Rule 26(a)(2)(C), which requires certain disclosures regarding an expert witness who is not required to provide a written report, such as, a treating physician.

As amended, Rule 26(a)(2)(C), Fed.R.Civ.P., provides that "if the witness is not required to provide a written report, this disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected testify." Rule 26(a)(2)(C), Fed.R.Civ.P. "These disclosure requirements were added 'to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions.'" *DeGuzman*, 2013 WL 3149323, at *2 (quoting Adv. Comm. Notes to 2010 Amendments). "Treating physicians or other health care professionals are primary examples of those who must be identified under Rule 26(a)(2)(A) and provide disclosures pursuant to Rule 26(a)(2)(C) as they may testify as both a fact and expert witness." *Id*.; *see also Carrillo v. B & J Andrews Enterprises, LLC*, 2013 WL 394207, at *4 (D. Nev., Jan. 29, 2013).

Under the current Federal Rules of Civil Procedure, which govern this case, if a witness is "one retained or specially employed to provide expert testimony in the case," the disclosure of his identity must be accompanied by a written report prepared and signed by

- 5 -

him. Fed.R.Civ.P. 26(a)(2)(B). These witnesses are referred to as "expert witnesses." If an expert witness is not retained or specially employed, the disclosure of his or her identity must also state (i) the subject matter on which he is expected to present evidence, and (ii) a summary of the facts and opinions to which he is expected to testify. *See* Fed.R.Civ.P. 26(a)(2)(C). The Federal Rules of Civil Procedure do not define the terms "treating physician." Generally speaking and in the context of the Federal Rules of Civil Procedure, a treating physician is a physician who is either treating or has treated a party for injuries and was not "retained or specially employed" within the meaning of Rule 26(a)(2)(B). *See DeGuzman*, 2013 WL 3149323, at *3; *Silver v. Shapiro*, 2011 WL 1321798, at *2 (D. Colo. April 5, 2011).

In *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 819 (9th Cir. 2011), decided under the procedural rules before the addition of Rule 26(a)(2)(C), the Ninth Circuit confirmed that "[g]enerally speaking, treating physicians are" not required to provide a Rule 26(a)(2)(B) report to the extent a treating physician's opinions are formed during the course of treatment. To date, however, the Ninth Circuit has not addressed the sufficiency of the disclosure requirements under Rule 26(a)(2)(C) when a treating physician's opinions "go beyond the usual scope of a treating doctor's testimony" and offers expert opinion evidence regarding the permanency and limitations of a plaintiff's injuries. 644 F.3d at 819-20. This is an issue this Magistrate Judge need not address at this time.

**IV. Discussion**

While Plaintiff describes the issue as a "discovery dispute," doc. 53 at 2, it is more accurate to label the issue as a request for judicial assistance in facilitating discovery on a material, important, and disputed issue (damages) with an imprisoned party. Similar requests are routinely done in federal district courts, predominantly in criminal cases in which the defendant's mental competency is at issue. *See*, *e.g.*, local competency examinations in criminal cases are conducted under 18 U.S.C. § 4241(a). Judicial involvement is not only necessary, but required, in civil cases where the deponent is imprisoned. *See* Rule 30(a)(2)(B), Fed.R.Civ.P. (requiring district court approval before taking the deposition on

an incarcerated deponent). A prompt evaluation of Plaintiff by Dr. Champagne at the Phoenix federal courthouse benefits both sides, aides in the quest for the truth, and is consistent with Rule 1, Fed.R.Civ.P., ("These rules . . . shall be construed and administered to secure the *just, speedy, and inexpensive* determination of every action.") (emphasis added). Granting the request also facilitates Plaintiff's ability to disclose or supplement prior answers to interrogatories and disclosures regarding Dr. Champagne's anticipated trial testimony required by the Federal Rules of Civil Procedure, and offers Defendants the options to timely depose Dr. Champagne and/or promptly schedule an independent medical examination ("IME") before the November 2013 deadlines.

It is premature to consider now most of Defendants' multiple conditional requests if Plaintiff's Motion is granted. Much depends on when Defendants' request an IME under Rule 35, Fed.R.Civ.P., to rebut Dr. Champagne's newly-formed opinions and when a supplemental disclosure or report is provided to Defendants in the context of the new deadlines to regarding expert witnesses. Of course, any timely future request that Defendants' IME be at the Phoenix courthouse will be given equal consideration. Nevertheless, these issues are beyond the scope of this Magistrate Judge's limited referral. Defendants' request that their IME expert, presently undisclosed, conduct an evaluation on the same date as Dr. Champagne's is both unworkable and impractical with Tuesday's scheduled evaluation by Dr. Champagne. This Magistrate Judge will grant Defendants' request, however, that Plaintiff pay for the costs of Dr. Champagne's evaluation.[5]

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Conduct Medical Examination by Treating Physician, doc. 61, is **GRANTED**. An separate Order Securing Attendance of Prisoner for Medical Exam has been entered.

---

[5] ADOC's Offender Information Unit has advised this Magistrate Judge's chambers that there will be no charge to transport Plaintiff to and from Phoenix for Dr. Champagne's evaluation.

**IT IS FURTHER ORDERED** that Plaintiff shall pay all costs associated Dr. Champagne's evaluation.

Dated this 23rd day of September, 2013.

Lawrence O. Anderson
United States Magistrate Judge